Good morning, Your Honors. May it please the Court, Kerry Johnson, on behalf of Petitioner Mr. Esteban Barragan-Zepeda. At this time, I would like to request two minutes for a rebuttal. Okay. Manage your time. Thank you. Your Honors, Mr. Barragan has lived legally in the United States for 40 years. And during that time, he served this country as a DEA informant for eight years. But now, he has been detained for over two years and faces removal to Mexico, where he is likely to be tortured or killed, despite eligibility for relief. As Mr. Barragan's removability argument will likely take some time to discuss in light of Coronado v. Holder, I will first address Mr. Barragan's asylum argument. Before you get there, Counsel, obviously we're going to get to Enriquez Rivas. Yes, Your Honor. What do we do with this case in light of that supervening decision? Your Honor, because the immigration judge did not have the benefit of Enriquez Rivas, this Court should reverse and remand to the immigration court to find that Mr. Barragan's proposed social groups are legally cognizable, contrary to the immigration judge's decision. Let's say we agree with you about that portion of the case. What about the rest of it? About the other issues. Removability, Your Honor? Regarding removability, in light of the circuit's recent decision in Coronado v. Holder, if this Court were to follow Coronado exactly, Mr. Barragan would likely be found removable. However, it is our contention that Coronado v. Holder is in direct conflict with DECOMP v. United States and the circuit's post-DECOMP decisions. Specifically, United States v. Acosta-Chavez and also Aguilar-Torcillos v. Holder. This circuit in Acosta-Chavez specifically stated that the modified categorical approach applies only when one alternative of the state statute is an element of the generic offense and another is not. In Aguilar-Torcillos, the circuit applied this principle of law to a statute that is similar to here, Health and Safety Code 11379, Transportation of a Controlled Substance. In Aguilar-Torcillos, the defendant was convicted of unauthorized use of a government computer. And the statute went on to list the unauthorized uses, including pornography, unauthorized advertising, and also chain letters, for example. At issue was pornography, which in the statute was overbroad as it encompassed both adult and child pornography without distinction. So therefore, this circuit refused to apply the modified categorical approach to determine which form of pornography would match with the generic offense. But counsel, correct me if I'm wrong. I gather you are conceding that in Coronado that an adjacent statute, but similar, similar structure, is in fact a divisible statute, right? Not in the sense that, although it's... Let me put it the other way. We can't use the categorical analysis to analyze 11379A, can we? No, Your Honor. Okay, so if we can't do that, then we fall back on modified categorical analysis. Aren't we really dealing here with the question of whether the I.J. properly relied in this case on the felony advisement, the waiver of rights, the plea form, the minute order, and the felony complaint to determine whether the controlled substance in this case was methamphetamine? Is that correct? If under the modified categorical... If the modified categorical approach were to apply, the immigration judge could... Well, it does, doesn't it? No, Your Honor. Is there any question that the modified... If we can't use the categorical analysis and it's a divisible statute, you agree with that, right? Not necessarily, Your Honor. Okay, why isn't this a divisible statute? Because similar to Aguilar-Torcillos, although here there are five subgroups of schedules of controlled substances listed in the disjunctive as Coronado notes, those subgroups are still overbroad, similar to Aguilar-Torcillos where pornography was found to be overbroad and the court refused to use the modified categorical approach. If in looking at the schedules of controlled substances that apply to Health and Safety Code 11379, those subgroups are still overbroad. So let me just be sure I'm understanding you. You're losing me here. You're saying the categorical analysis doesn't apply, but neither does the modified categorical analysis. So are you telling us we can't even look at the statute under either basis under Taylor? In this case, you could look to the statute, but not to the factual record here, which would apply under the modified categorical approach. Didn't the Supreme Court in Taylor tell us that if the statute doesn't fit on its face, then we can't use the categorical analysis? So there is only one other category, which is the modified categorical. Am I correct in understanding, you're not disagreeing with the fact that we use the modified categorical analysis. You're simply saying that the documentation that the IJ looked at here does not qualify under, say, DECOMP. Is that what you're saying? No, Your Honor. Okay. Is your argument that it's not divisible? Yes, Your Honor. Could you explain that? In that, even though it's listed in the disjunctive, because the subgroups are still overbroad, it is not divisible. Therefore... All right. Well, let's take your argument at that. What subgroup are you talking about you think is broad once we get past divisibility? Each subgroup is broad in this case, specifically looking at the stimulants. There are three additional controlled substances listed in the California schedule, Schedule 2D, that are not listed federally. They also include COT and also cathinone, which are not listed in the federal schedules. So to look at these subgroups, you would still not be able to determine what controlled substance is at issue, and the modified categorical approach could therefore not be applied, similar to Agnular-Torsios. This is because in DECOMP v. United States, the Supreme Court made clear that courts should not go on fact-finding missions when a statute was both overbroad and not divisible, as here, 11379 is not, we believe, in direct conflict with Coronado. Were the documents I referred to a moment ago outside the... what DECOMP permitted? No, Your Honor. So the IJ referred to proper documents. Your problem is you say that the whole thing hangs on whether or not this is a divisible statute. Yes, Your Honor. So if it is divisible, you lose on that issue, is that right? Yes, Your Honor. Okay. However, again, our contention is that the IJ should not have ever looked to those documents as the statute is overbroad and indivisible. To return to Mr. Berrigan's asylum argument, this circuit in Henriques Rivas clarified the social visibility standard that is required for asylum and clarified that it refers to societal perception and not on-site visibility. Mr. Berrigan's proposed social groups here are former DEA informants that have been identified by the family Michoacan and may be tortured or killed because they have been identified, and also potential victims of the cartel who have refused recruitment efforts known to be focused on United States deportees. And based on Henriques Rivas, both Mr. Berrigan's proposed social groups are legally cognizable. Since that decision, this Court has recognized other similar groups as legally cognizable. For example, in Henriques Rivas, Olmos Borjas v. Holder, this Court found that potential witnesses against gang members was a legally excuse me, a recognized social group. Also, government informants in Lopez Simon v. Holder, and finally DEA collaborators in Pinchas v. Holder. Counsel, with respect, I think you're arguing something that you told us that Henriques takes care of, and I would agree with you. You have not addressed the issue of whether or not there's substantial evidence supporting the conclusion that there's a lack of a well-founded fear of future persecution and, in fact, whether the government of Mexico is willing or unwilling or unable to control the drug cartels. Isn't that really the issue we're dealing with here if it goes back? Your Honor, I see my time is about to elapse. May you briefly answer your question? Sure. Because in this case, before this Court, the immigration judge found Mr. Berrigan's testimony was marginally credible. However, still credible, that would not be at issue, but perhaps at the immigration court they would address whether there was enough evidence for that. Thank you, counsel. Thank you. Thank you. Good morning, Your Honors, and may it please the Court. Michael Heiss on behalf of the respondent, the Attorney General of the United States. The Court lacks jurisdiction over this entire petition for review for two reasons. First, Petitioner failed to exhaust any of these arguments that we're hearing today by failing to raise them before the Board. Didn't the BIA cite to Bourbono? It did, Your Honor. And under the circumstances, aren't all of the issues that were presented before the IJ then presumed to have been heard by the BIA? Not precisely, Your Honor. Okay. How does that work in this case? In this specific case, the Board cited to Bourbono as to Petitioner's asylum withholding of removal and cap protection claims, and also as well as to his cancellation of removal claims. It did not address his removability. And this Court in Arsby, which I provided in a 28-J letter last week, discusses that distinction. This Court addressed the distinction as discussed in the Vevey, which was precisely what Your Honor is mentioning, that, you know, citation of Bourbono basically covers up the failure to exhaust. But what Arsby takes care of is the distinction between a removability issue and an asylum issue. But the IJ adopted the – I'm sorry, the BIA adopted the IJ's decision with respect to asylum, did it not? It did. Okay. So then, given the confluence of Bourbono and its adoption, how does that present an exhaustion issue? Well, we still have very specific arguments here that haven't been received. You can make them. I'm not to think they're very good, but you can sure make them. Certainly. Certainly. I mean, are you really contending that the asylum question wasn't exhausted before the BIA? You aren't, are you? The specific arguments we have here are regarding a particular social group claim. There's various avenues to reach asylum, a political claim, a religious-based claim. None of these arguments were presented to the agency, and that's the critical point, is that the agency has to have the opportunity to reach these issues in the first instance. Assuming that the Court will accept exhaustion under Bourbono, which it – having – the Board having cited Bourbono, which it sounds like the Court will, we nonetheless are looking at a question of the merit of the claim. As Judge Smith pointed out, even assuming that the agency erred with respect to the change subsequent with Enrique Ezriquez, we still don't have any proof that there's a nexus between the harm he fears and that particular protected ground. Okay. Where is the substantial evidence in the record as it currently exists that shows that the agency erred? Specifically, where is the evidence that Mr. Berrigan lacks a well-founded fear of future persecution? Assuming right now we've got a protected class because of Enrique Ezriquez. So now we're looking at whether or not there's substantial evidence that he lacked a well-founded fear of future persecution. Tell me what the government's position is on that. Well, what we have here is, you know, understandably an individual that was representing himself before the Immigration Court. But nonetheless, the Immigration Court made every effort and even stated so in the judge's decision that the judge was making every effort to help the alien make his case. But we still have a pretty vague claim here. Well, is it so vague? He testified subjectively that he thought he would be tortured and killed by the family Mico-Wakan. Somebody tried to kill him on account of his informant activities before. That meets the requirement under Lopez-Alvarado v. Ashcroft. Then on the objective component, he submitted a letter from his cousin in Mexico that warned that a dangerous member of the family Mico-Wakan knew him and was asking about him and that people in the hometown knew he was a DEA informant. That's pretty substantial, isn't it? Well, as Your Honor mentioned a pretty critical word there. It was objective. You've got two parts. You've got objective and subjective. He clearly meets the subjective, right? He believes, yes, he has satisfied. Under our case law, under Lopez-Alvarado. So why doesn't it meet the objective standard? A letter from his cousin is hardly objective evidence, Your Honor. It's clearly an interested witness, someone that would want to help him in any way possible as a relative. That's presumable here. It also is not a sworn statement. We also don't have any evidence. The I.J. didn't rely on that, right? I'm sorry? Did the I.J. rely on that reasoning? The I.J. considered that evidence but ultimately concluded that the record here, based on, as the Petitioner has repeated here, concluding that petition was only marginally credible. Well, what do we do with that before you go on? What do we do with the finding that it is marginally credible? Well, that's clearly not enough to be an adverse credibility finding. Right. But nonetheless, it's a question of substantial evidence, whether or not he has provided enough to satisfy the agency that he merits asylum. And what we have here is an individual that claims to have been a DEA informant for seven years. Is that in dispute? I would submit he has failed to establish that he actually was. He believes he was. He claims he was in the government computer. We all have a lot of computers, so I'm not sure which computer he's talking about. We're all in the government computer. Yeah, I was going to say, so is everybody in this room. But he did identify agents by name. He did. But he nonetheless made no effort to secure their testimony or a statement from them. And again, yes, he is proceeding pro se, but his proceedings were continued numerous times. Well, my understanding of the record is he identified them by name and said he thought that they had retired. And then he was found marginally credible. Is there anything else in the soup there that I'm missing that I should be considering? No, no. Okay. No. And ultimately, that is the point. It's his burden to prove that he's eligible for the relief he's seeking. Counsel, help me with this. I recognize that the I.J. did make some passing reference to this, but didn't the I.J. decide this issue based upon the fact that Mr. Barragan was not a member of a protected class? The judge reached both conclusions, Your Honor. Administrative record, page 59, that's the fourth paragraph on that page. The judge concluded that even if he was a member of a particular social group, he still failed to demonstrate a nexus between the harm he's fearing and his particular social group membership. But the judge also noted that he's also demonstrating a claim based on individuals that are suitors. But then he goes on to say the articulation of the social group is too broad and indeterminate. So, I mean, Enrique is directly on point in that, wouldn't you say? Sure, sure. Enrique's Rivas certainly is impactful of this case, but that also doesn't address that asylum is ultimately discretionary. That was, you know, of course, not an issue that the agency reached here, but it's a question of whether or not. Right. Isn't the whole, I mean, it seems to me the logical thing to do is to remand and allow the agency to apply Enrique's Rivas and its more recent board decisions on social group analysis. And then, of course, the government can raise all these other defenses. Certainly, Your Honor. But my point here is a couple of points, actually. First is that given that asylum is discretionary and we have an individual here convicted of multiple crimes, remand is arguably futile given that the agency could ultimately discretionarily deny asylum. But, I mean, that's every case. I mean, if you're relying on discretion, that's not our job to guess at what the agency is going to do. But not every alien has been convicted of multiple crimes. That comes before the court where this issue has been raised. Let me ask you, because we're going to run out of time, the Post and Counsel take the position that the statute in question here on the Taylor analysis, specifically 11379A, is not divisible. What's the government's position on that? Coronado is dispositive of this question. The court has long held that California Health and Safety Code controlled substances, that the list thereof is divisible. Descamps did not change that. Coronado? But I think her argument is slightly different. I think she's conceding that it's divisible, but she says as divided, the categories are too broad. That's a slightly different argument. That is slightly different than what was argued in the brief as well. What was argued in the brief is that the term controlled substance is overbroad, but also indivisible, leading to the absurd result that for an alien to be removable based on a California Health and Safety Code conviction, they need to possess every single one of the controlled substances. I think her argument was that there were more listed that were outlawed in California than there were in the federal statute. That has never been in dispute. I know. I mean, you're hearing it for the first time today, but do you have a response? Not a logical one, Your Honor. What we have, again, it's consistently been the case before this Court, the government has never disputed that the California schedule of controlled substances includes more substances. To conclude that that list written in the disjunctive is not divisible, or that the term controlled substances is somehow categorically overbroad to the point that it can't be reviewed, as Judge Smith was pointing out, where does this leave us, essentially? We can't apply the categorical approach, but then we can't apply the modified categorical approach, despite a clear record here. And, in fact, a situation where this one same petitioner previously argued that this statute is divisible. Administrative record page 725 on 727-3. We're moving in opposite directions at all times. Ultimately, what we have here is an individual that has never disputed that the drug involved in this case was methamphetamine. There's really not a, the trouble with applying a modified categorical approach at times, as Petitioner's Counsel points out, is essentially the opportunity for the immigration court to relitigate a prior conviction. That's simply not what's happening here. We have an individual that is not contesting that he possessed methamphetamine for sale. He's simply trying to argue this other question that somehow the statute is not divisible, which doesn't add up. If we accept that and that this other issue was not properly raised, I gather the government's position is that the comp has no impact on this case because the statute is divisible. Coronado shows that, and that the records that were used by the IJ to satisfy the requirements of the modified categorical analysis were more than enough, and that was properly sustained.  I mean, desk camps involved an individual convicted of burglary under California law, which allowed for lawful entries. And that was the issue, the way the statute was written. There was no way to actually divide that out. There was no disjunctive term for the court to review. So, again, attempting to relitigate a conviction, and that is simply not what we have here. Any further questions? Thank you for your argument. We'll give you two minutes for rebuttal. Your Honors, I know my time elapsed prior. Yes, I know. Thank you. I'm exercising my discretion to give you two minutes in recognition of your pro bono representation. There you go.  Regarding the removability issue, Justice Kennedy noted in Des Camps v. United States that this would be a wake-up call of sorts for the states with statutes that were overbroad and indivisible, as we contend Health and Safety Code 11-379 is here. And the legislature can easily respond by making these subcategories of controlled substances such that they list ones that are only included in the California schedule and then with those that fit under the federal offense separate. So when courts address the modified categorical approach, they could see that those elements do match, which do not. Counsel, I have no doubt that Justice Kennedy was not happy with the 459 analysis, but he was really chastising a separate fact-finding by the Court of Appeals. And in this case, you've got some specific documents that we've previously discussed. If this is not – rather, if it's a divisible statute, these documents that were used by the IJ are perfectly proper. Are they not under Des Camps? Yes. Okay. So that's really not your argument. You're just saying it's overbroad. Is that right? Yes. Okay. And it's our understanding that counsel for Mr. Coronado will be seeking rehearing en banc. We would request that this Court hold Mr. Berrigan's decision in the case that they do have that rehearing or this Court has the authority with the interest circuit split, in our opinion, to also recall for an en banc rehearing. Thank you, counsel. Thank you. And thank you for your pro bono representation. We appreciate you being here today. Your Honor, thank you for taking the time for us. Thanks. Of course. Thank you both for your arguments. The case just heard will be submitted for decision.
judges: Thomas, Smith, Christen